DAUBE v. PHILADELPHIA & R. COAL & IRON CO.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1897.)

No. 323.

1. **VERDICT—RECORD ON APPEAL—BILL OF EXCEPTIONS.**
Whether a verdict be general or special, a bill of exceptions is not necessary to make it a part of the record. Its proper place is in the docket entry showing its return.

2. **SPECIAL VERDICT—FORM AND CONTENTS.**
A special verdict, whether constructed in the form of answers to interrogatories or otherwise, should state all the facts essential to the determination of the issues of the case as made by the pleadings, though some of the facts may not have been actually disputed; and it should not be accompanied by a general verdict.

3. SAME.

In determining the force of a special verdict or finding, only the facts found, unmodified by the statements of counsel, or by reference to the evidence, can be considered; and the silence of the verdict in respect to a fact is equivalent to an express finding against the party who has the burden of proof.

4. GUARANTY—INTERPRETATION.

One D. guarantied the payment by the firm of D. & R. for all goods bought by them from the P. Co. A receiver of the P. Co. was afterwards appointed, who sold goods to D. & R. *Held*, that such sales were not within the scope of D.'s guaranty.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

B. M. Shaffner, for plaintiff in error.

Frederic Ullmann and Nicholas W. Hacker, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. This was an action in assumpsit by the Philadelphia & Reading Coal & Iron Company, a corporation of Pennsylvania, defendant in error, against Louis Daube, the plaintiff in error, upon a contract of guaranty of which the following is a copy:

"Chicago, Ill., June 14, 1892. For the purpose of enabling Daube & Rosenheim to purchase coal on credit from the Philadelphia & Reading Coal & Iron Company, of Chicago, I hereby guaranty that said Daube & Rosenheim shall promptly pay to it, at the expiration of the time of credit given, for all coal it has sold or may hereafter sell to Daube & Rosenheim on credit, until this guaranty shall be revoked by notice in writing. And I hereby waive any notice of the time or amount of purchases, or default of payment, or delays or extension of time of payment, and I consent that such extensions may at any time be made. My liability hereunder shall cover any balance due or to become due, not exceeding $10,000.00. Louis Daube."

It is alleged, in the special count of the declaration, that after the execution of the contract, and between its date and July 1, 1893, the plaintiff, confiding in the promise and undertaking of the defendant, sold and delivered to Daube & Rosenheim, at Chicago, quantities of coal to the amount, in value and price, of $10,000, which, though long due, remained unpaid. The declaration also contains common counts for goods sold. Issue was joined by a plea in denial, supported by an affidavit of merits.

A docket entry states that the jury returned a "sealed verdict, finding for the plaintiff, and assessing its damages at the sum of four thousand one hundred and twenty-three $^{23}/_{100}$ dollars," but the verdict is not set out in the entry, as it ought to have been, and the reference, it is to be presumed, was to "a special verdict," so-called, which is made a part of the record by bill of exceptions. That there was no general verdict is indicated by the statement, in the opinion of the court, that "the case was submitted to the jury for a special verdict." Whether a verdict be general or special, a bill of exceptions is not necessary to make it a part of the record. Its proper place is in the docket entry showing its return.

The interrogatories submitted to the jury, and the answers returned, were as follows:

"First question: Did Daube & Rosenheim pay in full for all purchases of coal from plaintiff prior and up to February 20, 1893? If not, what amount is un-

paid thereof, for which you assess as the amount of plaintiff's damages thereon? Answer: No. $900.00. Second question: Were the purchases of coal by Daube & Rosenheim, after February 20, 1893, made from plaintiff or its agents? Answer: No. Third question: If such purchases after February 20, 1893, were not made from the plaintiff or its agents, were they made from agents and representatives of certain receivers of the property of said plaintiff? Answer: Yes. Fourth question: If the court shall be of opinion that the plaintiff is entitled to recover upon your answer to the foregoing questions, what amount do you assess as the amount of plaintiff's damages for all coal delivered under the evidence? Answer: $4,123.23."

The case has been submitted to us upon briefs without oral argument. The one question discussed arises upon the fifth specification of error, which is to the effect that the judgment should have been for $900, instead of $4,123.23, the amount awarded. While in the federal courts a judge may properly refuse to require a jury to answer special interrogatories in addition to returning a general verdict (Railroad Co. v. Horst, 93 U. S. 291; In re Chateaugay Iron Co., 128 U. S. 544, 9 Sup. Ct. 150; Association v. Barry, 131 U. S. 100, 119, 9 Sup. Ct. 755; McElwee v. Lumber Co., 37 U. S. App. 298, 16 C. C. A. 232, and 69 Fed. 302), we perceive no conclusive objection to the taking of a special verdict in the form of answers to interrogatories, as the bill of exceptions shows the intention to have been in this instance. But, however constructed, a special verdict should state all the facts essential to the determination of the issues of the case, and should not be accompanied by a general verdict. Wesson v. Saline Co., 34 U. S. App. 680, 20 C. C. A. 227, and 73 Fed. 917; Austin v. Hamilton Co. (No. 172; this court) 76 Fed. 208; British Queen Min. Co. v. Baker Silver Min. Co., 139 U. S. 222, 11 Sup. Ct. 523. This verdict is technically defective and insufficient to support the judgment rendered, for the reason, if no other, that it does not show that the alleged contract of guaranty existed and was in force between the parties at the time of the transactions in question. There is no dispute about the fact of its existence, but, not having been admitted by the pleadings, it should have been covered by the verdict, no matter how clear and unquestioned the evidence. In respect to the point in actual dispute, the finding makes it clear that, upon the sales made before February 20, 1893, there was due and unpaid the sum of $900, and that after that date the purchases of coal by Daube & Rosenheim were not made of the Philadelphia & Reading Coal & Iron Company, or its agents, but of agents and representatives of receivers of the property of that company; and the question is whether the contract of guaranty extends to the purchases made of the receivers.

In the opinion delivered below (71 Fed. 583), consideration was given to the failure of the special finding to show by what court the receivers were appointed, and with what powers they were clothed; and, on the statements and admissions of counsel in the course of the trial, the court assumed that the receivership was not of local appointment or jurisdiction, and that the receivers should be "regarded as having the powers only which can generally be conferred by courts of chancery," and consequently could not maintain the action in their own name. In determining the force of a special verdict or finding, only the facts found, unmodified by the statements of counsel or by refer-

ence to the evidence, can be considered. Distilling & Cattle Feeding Co. v. Gottschalk Co., 24 U. S. App. 638, 13 C. C. A. 618, and 66 Fed. 609; U. S. v. Arnold, 34 U. S. App. 177, 16 C. C. A. 575, and 69 Fed. 987. The silence of the verdict in respect to a fact is equivalent to an express finding against the party who has the burden of proof. Wesson v. Saline Co., supra; Sneed v. Milling Co., 20 C. C. A. 230, 73 Fed. 925. It being found, in this instance, that a large part of the sales in question were made by receivers, the burden was upon the plaintiff in the action to show, if possible, that the appointment and powers of the receivers were such as to bring within the scope of the guaranty the sales which the receivers had made; and, if facts essential to that conclusion have not been found, the necessary inference is that they did not exist. If, however, it be assumed that the receivers were appointed in a foreign jurisdiction, outside of which they had been given no special authority to bring suits, does it follow that they had no right to sue upon contracts made with themselves? To such contracts they had the legal title, and consequently the right, as we suppose, to enforce them by suit in any competent tribunal; but whether the receivers could sue in their own names or not is not the question here, and perhaps is not closely relevant. We deem it clear that, without an assignment of the contracts by the receivers, or a devolution of their title, by an order of the court discharging the receivers and restoring the property to the company from which it was taken, that company could have had no action against Daube & Rosenheim on account of the sales made to them by the receivers, and therefore could have had no right of action at law upon the contract of guaranty, assuming that the guaranty extended to sales made by the receivers.

Upon the merits of the controversy, defects in the special verdict being disregarded, the vital question is whether the sales made by the receivers to Daube & Rosenheim were within the scope of the contract of guaranty. They were not within the letter of the contract, and to include them by construction or intendment was, in our judgment, an invasion of the wholesome rule, recognized in the opinion below as elementary, "that a guarantor or surety may stand upon the strict letter of his contract," and can be liable only "within the clear terms of the obligation, and between the identical parties who are named in it." Any change in parties or terms, even though beneficial to him, if made without his consent discharges him. A receiver is the agent of the court which appoints him, and not, in any proper or direct sense, of the person or corporation of whose property he is given charge. He is appointed by the court, and, except in the court, there is no power of removal or of control over his actions. The intervention of an executor, administrator, or assignee, in the place of the original party, as uniformly it has been held and is conceded, terminates the responsibility of a guarantor. No more than an executor or assignee does a receiver represent the one to whom, in such cases, the guarantor undertakes to be responsible.

The distinction is urged that receivers do not, like legal representatives, become owners of the property committed to their charge. Generally that may be so. Whether so in this instance does not appear; but, if it be conceded, its essential bearing upon the relations, rights,

and remedies of the parties, so long as it cannot be said that the receivers were in possession as the agents and under the control of the coal and iron company, is not perceived. The sales in question, as already stated, were made by the receivers, in their own name, and in the conduct of a business which, presumably, had the sanction of the court. The obligations of their vendees was to them. The legal title was theirs, and consequently the right to sue; and if, while in office, they had brought suit against Daube & Rosenheim upon the original contracts of sale, the latter could have availed themselves of no set-off or counterclaim on account of their dealings with the coal and iron company prior to the appointment of the receivers. For such purposes, the business done by the receivers was not a mere continuation of the business of the company. If there had been an executory contract, with mutual obligations, between Daube & Rosenheim and the company, the receivers, it is settled, would have had the choice, within a reasonable time after appointment, and under the authority of the court, to abide by the contract or to reject it; and is it to be said, in view of the strict rule by which the contracts of suretyship and guaranty are governed, that a guarantor, who has become responsible for one of the parties to such a contract, is subject to consequences and contingencies dependent upon the election of any receiver who may be appointed for the other party? If such consequences are exceptional, and result, as has been suggested, from "rules of policy appropriate to the equitable jurisdiction," protection against them is no less important, and, as we conceive, no less clearly within the guarantor's right to insist upon the letter of his contract, than if invasions of his rights at law were involved.

Judgment reversed, and case remanded, with direction to grant a venire de novo.