## UNITED STATES v. HARRIS et al.[1]

### (Circuit Court of Appeals, Seventh Circuit. January 9, 1897.)

### No. 319.

1. SET-OFF BY GOVERNMENT—MONEYS FRAUDULENTLY OBTAINED FROM POSTMASTERS.
   One H. was arrested upon a charge of obtaining money from postmasters upon forged money orders, on which charge he was afterwards convicted. While in custody, he was searched by a post-office inspector, and a sum of money was taken from his person, which was afterwards deposited in the treasury of the United States. H. sued the government to recover the money so taken. *Held*, that although the money taken from H. was not identified as the same money obtained by his forgeries, and although the postmasters, and not the government, were responsible for the money paid on the forged orders, the government could claim, as a set-off to H.'s demand, the amount of any moneys clearly shown to have been fraudulently obtained by him from the postmasters.

2. SAME—FINDINGS OF FACT.
   A statement, in a finding by the court, that "no set-off or recoupment * * * against this claim exists," following an explicit finding of facts which establish a set-off, is merely a conclusion, and does not control or affect the facts so found.

3. SPECIAL FINDINGS.
   The silence of a special finding as to a fact is equivalent to a finding against the party having the burden of proof of such fact.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This was an action against the United States, prosecuted under the Act March 3, 1887, c. 359 (24 Stat. 505). The original petition was brought by Jesse A. Baldwin, for the use of himself and Lottie A. Harris, the wife of Le Roy S. Harris: and, in substance, it alleged that on February 24, 1894, Le Roy Harris was under arrest, and in the custody of the United States marshal for the Western district of New York, charged with violations of the postal laws, in that he had obtained from postmasters at La Salle, Aurora, and Ottawa, Ill., various sums of money upon forged money orders; that, while he was so in custody, James E. Stuart, a special agent of the post-office department, forcibly searched his person, and took from him the sum of $1,310, which belonged to him; that on March 13, 1894, the petitioner was employed to defend Harris in the trials upon the indictments then pending in the United States district court, at Chicago, and on that day was given by Harris an order on Stuart for the said amount of $1,310, of which he was to retain $350 as and for attorney's fees, and to deliver the remainder to Lottie A. Harris, to whom Le Roy Harris was indebted for a like amount, for which she afterwards recovered judgment against him; that he presented the order to Stuart before 12 o'clock noon of the day it was drawn; that on the next day Harris sold and assigned to the petitioner, by an

---

[1] For opinion on motion to dismiss the appeal, see 76 Fed. 241.

instrument in writing, all his right, title, and interest in and to the said sum of $1,310, for the use of the petitioner and Lottie A. Harris; that Stuart refused to deliver the money to the petitioner, and falsely claimed that two weeks before he had sent the money to Washington, to be turned over to the post-office department; that at 2 o'clock on March 13, 1894, the trial of Le Roy Harris upon the indictments against him was begun, and continued through three days; that neither when asked to surrender the money, nor at any time during the trial, did Stuart claim that the money, or any part of it, could be identified as the proceeds of any crime of Harris against the United States, but, on the contrary, he testified at the trial that his investigation corroborated the statement of Harris that he had gotten the money either from the Mount Morris Bank or the Harlem Savings Bank, N. Y.; that afterwards, on March 19, 1894, Stuart delivered the money to the chief post-office inspector at Washington, D. C., who covered the same into the treasury of the United States, where it is still held; that the money was taken from Harris wholly without authority of law; and that, the premises considered, the United States was indebted to the petitioner for the amount stated, for the uses aforesaid, etc.

On September 27, 1895, an answer was filed, alleging, with other averments which are not now material, that Harris, by falsely pretending to be an agent of the post-office department, had obtained of the postmaster at Norton Heights, Conn., 16 blank money orders, and advices, which he filled out, 15 for $200 each, and 1 for $100, making them payable at different post offices in Ohio, Indiana, and Illinois, and received payment thereof, the last being paid to him on January 11, 1894, at La Salle, Ill.; that on January 15, 1894, he deposited in the Mount Morris Bank, N. Y., the sum of $1,272, which he allowed to remain there until January 30th and 31st, when he withdrew it; that on February 17, 1894, he was arrested at Buffalo, N. Y., and one week later was brought to Chicago by the United States marshal, to answer for the crimes aforesaid, committed in this jurisdiction; that search was then made of his person, and $1,310, in $100 bills, $50 bills, and $20 bills, found thereon, about one-half sewed in the waist-band of his pantaloons, and the remainder pasted on the bare sole of his right foot; that he was indicted and brought to trial in the United States district court at Chicago on the 13th day, and, on the 18th day of March following, was convicted for having obtained of the postmasters at La Salle, Aurora, and Ottawa three of the stolen money orders aforesaid, and was thereafter committed to the penitentiary, having pending against him at the time prosecutions and complaints for the remainder of said $3,100 so by him falsely and fraudulently taken by him from the United States, and never restored; that it is true that on March 13, 1894, Stuart, as post-office inspector at Chicago, (but at what particular time, and by what method, the respondent does not deem important), "did forward the said sum of $1,310, part and parcel, as this respondent believes, of the proceeds of the crimes and swindles of said Harris, and which were the results of his fraudulent money-order transactions aforesaid, to the P. O. department at Washington," where it is "deposited to be held as evidence against said Harris, and (in) the future trials and causes in the trials aforesaid, being the identical money found on the person, and to satisfy the just demands of the government of the United States, and in part to recoup the government of the United States for the robberies and frauds aforesaid"; that as to the declaration of Stuart at the trial concerning the identity of the money, and its identification as the proceeds of the crime, the respondent does not know, save as informed by the petition and by former statements of Stuart in testifying in other causes in other courts. In respect to other matters alleged in the petition, the answer denies knowledge, and requires strict proof. It is also denied that the taking of the money by Stuart was unlawful, and that the United States is indebted to Harris in the sum of $1,310, or for any other amount. The cause having been set down for hearing on December 10, 1895, Le Roy Harris on that day filed with the clerk of the court his petition, entitled as in the cause pending, alleging, in substance, that he had a claim against the United States for the sum of $1,310; that he was indebted to Jesse A. Baldwin and Lottie A. Harris; that he adopted the petition therein before filed; and prayed that he be substituted as party complainant "in lieu of Jesse A. Baldwin, for the use of Jesse A. Baldwin and Lottie A. Harris, and that the suit herein may proceed under the title of 'Le Roy Harris, for the Use of Jesse A. Baldwin and Lottie

A. Harris, vs. The United States.'" On the same day, leave of court was "given Lottie A. Harris to join as party complainant, and adopt the allegations of the petitioner"; and the cause, having been partly heard, was continued to the ensuing 12th of the month, but on the same day, December 10th, a further order was made, on the motion of Le Roy S. Harris, consented to by the petitioner, that Le Roy S. Harris be substituted as complainant, for the use of Jesse A. Baldwin and Lottie A. Harris, and that the suit proceed under the title of "Le Roy S. Harris, for the Use, &c., vs. The United States," and that the answer on file stand as an answer to the petition as amended, and under the new title.

On December 12th the trial was concluded, the court making a special finding of facts, and stating its conclusions of law, as follows:

"Finding of facts: I find, from the undisputed evidence in this case, and from the admissions in the answer, and made during the trial, the following: The petitioner, Le Roy S. Harris, was indicted in the United States district court for this district, in February, 1894, for violating the postal laws, and on March 15th of that year he was found guilty of having (about the middle of January of that year) passed upon the postmasters at Ottawa and La Salle, and the assistant postmaster at Aurora, Illinois, money orders, to which the signatures had been forged, and upon which he received from them sums of money aggregating $600.00; that while he was under arrest, and on the 24th day of February, 1894, he was searched by Captain Stuart, then and now a post-office inspector, who took from him $1,310, which sum of money Capt. Stuart afterwards, and before the beginning of this suit, turned over to the United States, and has been deposited in the United States treasury. It further appears from the answer of the defendant in this case and the evidence that, though the United States has received the money, it has refused to pay it over, and it bases its defense to this suit upon the theory that it has a counterclaim or right of recoupment against Harris, to satisfy some alleged claim or demand of the United States against him, growing out of what are termed in the answer 'robberies and frauds committed by the said Harris.' I find also that at no time has the government claimed that any portion of this $1,310 could be identified as having been paid to Harris from any of the post offices mentioned, and that, on the contrary, Harris received $1,772 from one Charles P. Depew, in the city of New York, on the 31st day of January, which amount was drawn by Depew from two banks in New York City (in which Harris had an account) upon the personal checks of Harris, payable to the order of Depew, and that in one of the banks, from which $505 was received by Harris that day, the money had been on deposit since September, 1893, in the name of Harris, but for the use of his wife; and, though proof is lacking to show that the identical money taken from Harris by Stuart was this money received from the banks, yet it seems a fair presumption that it was. It also appears that Jesse A. Baldwin, Esq., defended Harris in the criminal prosecutions, and that on the 13th day of March, 1894, Harris gave him an order on Capt. Stuart for the money, which order was presented the same day; and that on the 14th of March, 1894, Harris executed and delivered to Baldwin an assignment of the claim, of which it was said that $350 was due to Baldwin, and $960 to the wife of Harris. Under the terms of the act under which this suit is brought, it is the duty of the district attorney to 'file a notice of any counterclaim, set-off, claim for damages, or other demand or defense whatsoever, of the government, in the premises.' Pursuant to this requirement, the district attorney, in his answer, sets up in general terms a counterclaim or set-off in favor of the United States; but, under the evidence adduced at the trial in relation thereto, I find that no set-off or recoupment in favor of the government, and against this claim, exists.

"Conclusions: Upon the foregoing state of facts, my conclusions are that the plaintiff is entitled to recover. The learned assistants to the district attorney have insisted that the jurisdiction of this court in cases of this kind is limited to causes arising ex contractu, and they raised the question whether this is not an action based upon the tort or unlawful act of Capt. Stuart, as an officer of the government, and invoked a well-known principle that the government is generally not liable for the mere torts of its officers. The taking of the money by Capt. Stuart was conceded to be unjustifiable and unlawful, but it was insisted that the government was not thereby made liable. If this were a suit

against the United States for damages for the misconduct or tort of one of its officers, their contentions in that respect would, undoubtedly, be sustained, but this is not such an action. It is a familiar principle that an injured party may waive a tort against him, and sue in assumpsit. This suit is not an action in tort, but is, in legal effect, a simple action in assumpsit for money had and received; and, if brought against an individual or a private corporation, a declaration in assumpsit with the common counts for money had and received would be good. Under the provisions of this act, and as was held in the case of Chappell v. U. S., 34 Fed. 673, the pleadings in actions of this character are informal, and the legal effect of the petition as it now stands is substantially that of a declaration in assumpsit. The government having received the money which belonged to Harris, I am clear that this action is maintainable. It was also contended that, under section 3477 of the Revised Statutes of the United States, the assignment to Baldwin was void. Without deciding upon its legal effect, it is sufficient to say that it indicates a moral and perhaps a legal liability to Baldwin and the wife of Harris from Harris or Capt. Stuart; but in this case, as both Baldwin and Mrs. Harris are parties to this litigation, and will be bound by it so far as the government is concerned, it cannot cut any figure. Under the general claim of set-off or recoupment made by the United States, and urged upon me, I am of the opinion that any moneys paid by postmasters upon forged signatures to money orders would be the loss of the postmasters, and not of the government; and, that being true, I am of the opinion that the government has no claim, by way of set-off or recoupment, on account of any moneys paid to Harris by postmasters who were careless enough to pay upon forged signatures. It would never do to admit that the United States would be liable for moneys paid out by its subtreasurers, postmasters, and other accounting officers upon forged signatures. Public policy requires that such officers shall be held to a high degree of care in disbursing money, and this is accomplished by making them liable for any loss occasioned by their paying out money on forged signatures. As, therefore, the loss would not be that of the government, it would not constitute a set-off or defense in this case if proved. Let a judgment be entered for the petitioner for $1,810."

John C. Black, U. S. Dist. Atty.

Jesse A. Baldwin and Henry R. Baldwin, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Of the numerous errors assigned, the specifications in large part are predicated upon the reasons of the court for the conclusion declared. The finding being special, as the statute requires, the one question to be considered is whether the facts found justify the judgment rendered. We are of opinion that the recovery should have been of a less sum. The fact is distinctly found that Harris received the aggregate sum of $600 on the money orders cashed at Ottawa, La Salle, and Aurora, and to that extent the set-off pleaded is established. While it is true that postmasters are responsible to the government for moneys paid out upon forged signatures to money orders or otherwise lost, it does not result necessarily, or upon any consideration of public policy, that, on the state of facts shown in this record, the government may not assert the right of set-off, and thereby avoid the necessity of exacting the amount so recovered of its officers, whose fidelity is unquestioned, or of their unoffending bondsmen. While in the possession of the postmasters, the money obtained by Harris belonged to the government. Rev. St. c. 13. Like an individual owner, the government had a right to pursue the money, and to reclaim it from Harris' wrongful

possession, and, failing in that, to recover of him the amount by suit or in any way provided by law. The statute which authorizes suits against the government, and under which this action was brought, requires the district attorney "to file a notice of any counterclaim, set-off, claim for damages, or other demand or defense whatsoever of the government in the premises." This suit is maintainable only upon the theory that any tort committed by Stuart in taking money from the person of Harris, and turning it into the treasury, had been waived, and that the government is liable as upon an implied promise to return the money or an equal amount. See Langford v. U. S., 101 U. S. 341. So, likewise, even if, under this statute, the strict rule permitted a set-off only of a liability on contract against a demand of the same character, the government was at liberty, for the purposes of the action, to waive the tort of Harris in taking the money, and assert his implied promise to repay. The doctrine is familiar.

It is insisted, however, that the question of set-off is determined by the last sentence of the finding, wherein the court said: "Under the evidence adduced at the trial in relation thereto, I find that no set-off or recoupment in favor of the government, and against this claim, exists." That expression has no proper place in the finding. It is the statement of a conclusion, and does not control or affect the fact explicitly and properly stated, that Harris had received of postmasters, upon forged orders, the sum of $600, which, in the absence of any statement of fact to the contrary, will be presumed to have belonged to the government, notwithstanding the suggestion at the hearing that the postmasters may have used individual funds in paying the orders.

The right of set-off is not affected by the alleged assignment of the claim. All transfers and assignments of claims upon the United States, made before the allowance thereof, are declared by statute to be absolutely null and void. Rev. St. § 3477. The petition charges that, on March 13th, Harris gave Baldwin an order for the money; that the order was presented to Stuart before noon of that day; that on the next day a formal assignment was executed; and that Stuart retained possession of the money until the ensuing 19th; but in the answer it is alleged that Stuart transmitted the money to Washington on the 13th, without stating whether it was done before or after the order was executed or presented. The burden of proving, if the fact be material to his right of recovery, that an assignment was made before the money passed out of the possession of Stuart, was upon the petitioner, and, it not being so stated in the special finding, the contrary must be inferred. Wesson v. Saline Co., 34 U. S. App. 680, 20 C. C. A. 227, and 73 Fed. 917; Sneed v. Milling Co., 20 C. C. A. 230, 73 Fed. 925; Daube v. Iron Co. (No. 323 of this court) 77 Fed. 713. When, therefore, the assignment was attempted, it must be deemed to have been of a claim against the government, and not against Stuart individually. If the latter, then the judgment, rendered, as it was, in favor of Harris in his own right, was totally wrong.

The judgment below is reversed, and the case remanded, with instructions to give judgment for the complainant in the sum of $710.