## O. H. Jewell Filter Co. v. James S. Kirk et al.

1. DAMAGES—*Measure of, for Breach of Warranty of a Filtering Plant.*—There is no reason why, for a breach of warranty of a filtering plant, the plaintiff may not recover as damages all the money paid for such plant and all loss otherwise suffered in consequence of the failure of the plant to do the work as warranted.

2. CONSTRUCTION OF CONTRACTS—*Duty of the Court.*—A court in construing a contract will place itself in the shoes of the contracting parties that it may view the subject-matter of the agreement in the light the parties viewed it and thus understand what was intended to be accomplished by it.

3. WARRANTY—*What a General Warranty Does Not Cover.*—A general warranty does not cover defects obvious to the senses and known to him to whom the warranty is made.

**Assumpsit,** for a breach of warranty. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed May 23, 1902.

**Statement.**—In 1896 appellees engaged in the manufacture of soap and glycerine. Their factory was on the Chicago river, near Rush street, about a quarter of a mile from the lake. Appellees had mainly used lake water furnished by the city, for the purpose of supplying their

boilers with the water necessary to make the steam required in their establishment, steam being used not only for power and heating, but also for making soap and other purposes. Appellees determined, as a matter of economy, to use the river water which flowed by their factory, and to cut off the expense of the lake water if that could be successfully done.

Appellant was a corporation organized for the purpose of manufacturing and installing filters, having been engaged in that business for several years. A proposition submitted by appellant for the erection and installation of one of their gravity filter plants in the factory of appellees was accepted and such plant was thereafter constructed in the premises of appellees, and there used for some time. Later, appellees claiming that the plant did not comply with the requirements of the contract, commenced suit in assumpsit against appellant in the Circuit Court on the 12th day of November, 1897. Their declaration consisted of one special count for breach of guaranty contained in the contract, and the common counts. To this appellant filed a plea of the general issue. Among other things there was set forth in the declaration the following:

"That on the 22d of June, 1897, having discovered that the filter plant did not answer and could not be made to answer the guaranty, appellees rescinded the agreement, offered to return the filter plant and appliances, and demanded repayment of the moneys paid to appellant."

Attached to the declaration was a copy of the contract, which is in part as follows:

"We guarantee the capacity of these filters, and that they will operate mechanically in a thorough and be built in a workmanlike manner. The filter tanks proper will have to be built within the place where they are to be located, which work we would commence immediately after you have the foundations ready. It is also understood that you will provide the power for revolving the stirring apparatus. We will furnish the above for the sum of $2,500. These filters would have an easy capacity of filtering 15,000 gallons per hour, which is more than fifty per cent above your actual requirements; and we guarantee the filtrate will be clear and bright for the purpose for which

they are needed; to render the river water and the con-
densed water suitable for your boilers shall be accomplished;
provided, however, that occasionally, should the condition
of the water require, that you will, in addition to the filters,
use a small amount of coagulant for assisting in arresting
the impurities, which might thus need to be retained upon
the filtering bed."

Trusting this matter will receive your favorable con-
sideration, we remain.

                    Yours respectfully,
                        O. H. JEWELL FILTER CO.,
                        IRA H. JEWELL, V.-Pres't."

On the calling of the case for trial the parties waived
a jury, and the case was heard by the court without a jury;
the 19th day of January, 1901, the court announced its
findings in favor of the plaintiffs (appellees), and thereupon
gave judgment against appellant for $1,971.78.

No controversy was made in the case over the making
of the contract or its terms. The controversy was upon the
proper construction of the guaranty, and as to whether there
was a failure of the filter plant to meet the requirements
of the guaranty under such circumstances and conditions
as to give to appellees right of action. Upon the trial all
complaints of the filter plant were formally withdrawn save
and except that the Chicago river water, passing through
the filters into the boilers, would foam, necessitating the
shutting down of the boiler plant to stop the foaming, and
this with such frequency as to compel, finally, the abandon-
ment of the use of the plant. It was contended in behalf
of defendant (appellant), that the filter plant, in fact,
accomplished the work which it was required and guaran-
teed to do; and that the foaming of the water in the boilers
was not the result of any failure or defect in the plant itself,
but by reason of the manner in which the plaintiffs handled
the filter and their own boiler plant; it being contended
that by reason of the unskillful and improper conduct of
appellees in these particulars whatever difficulty existed
arose, and was therefore chargeable to appellees themselves
and not to any defect or failure in the filter plant.

W. P. BLACK, attorney for appellant.

O. H. Jewell Filter Co. v. Kirk.

HOLT, WHEELER & SIDLEY, attorneys for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The damages found by the Circuit Court were arrived at as follows:

Cash paid by appellees to appellant.............$1,750.00
Cash paid for material and labor arranging for
   reception of plant........................... 221.78

$1,971.78

Appellant urges that under the declaration there could be had, under the common counts, only a recovery based upon a rescission of the contract; and that it was error to include the $221.78 of expenses, which it is insisted could be awarded only for breach of warranty. We see no reason why, for breach of warranty, appellees might not recover as damages all money paid to appellant and all loss otherwise suffered in consequence of a failure of the plant to do that warranted.

The expense of necessary work done in arranging for the reception of the plant, if rendered useless by the failure of the plant to do that appellant guaranteed it would, might also be recovered in a suit for breach of warranty.

In an action for breach of such a warranty as this, neither the amount paid by the vendee to the manufacturer, nor that paid by the vendee for the construction of a place in which to put the plant, nor these conjointly, is or are necessarily the measure of damage; that may be less than either, or more than all combined, as the evidence may disclose.

We do not regard the evidence as showing that the $221.78 was expended in connecting "the inlet, pure water delivery and waste pipes to same as shown" upon appellant's plan; but if it did so show we do not think that the propriety of reckoning this sum in the estimate of damages would be affected.

As before said, appellees are entitled to recover the damage they have suffered in consequence of the breach of war-

ranty. They were by the contract required to make certain connections; if they did so, and by the failure of the filter to do that guaranteed such connections are rendered useless and the money expended therefor has thus been lost to appellees, it is an element of damage.

Appellant contends that the filtrate that passed through the filters it furnished was "clear and bright for the purpose for which they (the filters) were needed, to render the river water and the condensed water suitable for (appellees') boilers."

Is the evidence such that it does not sustain the finding of the Circuit Court against this contention?

It is undisputed that the water filtered by the plant supplied by appellant foamed in the boilers so as to materially affect their action if not render their use unsafe.

Did the guarantee cover such foaming?

All instruments are construed most strongly against the makers, among other things, because the language employed is that chosen by them.

A court, in construing a contract, will place itself in the shoes of the parties, that it may view the subject-matter of the agreement in the light the contracting parties viewed it and thus understand what was intended to be accomplished by it.

Appellees desired to save the expense of hydrant water by having river water made suitable for use in the steam boilers. Appellant knew this and that unless the "filtrate" was suitable for the boilers it would be of no use to appellees.

In view of such knowledge, appellant guaranteed that the filtrate would be clear and bright for the purpose for which the filters were needed, to render the river water and the condensed water suitable for appellees' boilers.

We can not think that appellant intended to guarantee or believed that appellees understood that the guaranty was only that the filtered water should be clear and bright and that there was no guaranty the filtrate should be suitable for the boilers.

The guaranty was not merely that clear and bright water

O. H. Jewell Filter Co. v. Kirk.

should be supplied, or water having "organic matter" only in solution.

The contract contains no specific mention of acids, oils or alkalies in the filtered water in suspension or solution. It is an agreement that the filtered water should be suitable for appellees' boilers, not that the filters "should remove matters held in suspension."

If, as is contended, the only purpose of a filter is to remove matter in suspension, and appellant meant to undertake to do no more, it should have so limited its guaranty.

The question before the court below and before us is not, did these filters accomplish all that a filter can, but did they fulfill the guaranty.

It is true that a general warranty does not cover defects obvious to the senses and known to him to whom the warranty is made. (Hill v. North, 34 Vt. 604–616.) It is not claimed that there was any obvious defect in their filters. There is no evidence that appellees in entering into the agreement knew that they would not fulfill the guaranty; nor is it, so far as we are aware, common knowledge that no filter will remove salts, acids, oils, alkalies or other matter held in solution.

We do not think the evidence shows that appellees, after discovering the defect, kept the filters an unreasonable time before deciding to rescind or sue for damages. Appellant made much effort to remedy the unsatisfactory condition. It failed to do this.

The evidence shows that the filters are useless to appellees; the damages awarded were justified by the testimony.

We find neither in the admission or rejection of offered evidence nor in the holdings of the trial court upon propositions of law any error requiring a reversal of the judgment. It is therefore affirmed.