HUBSHMAN et al. v. LOUIS KEER SHOE CO., Inc.

No. 7726.

Circuit Court of Appeals, Seventh Circuit.

May 23, 1942.

Rehearing Denied July 16, 1942.

138

Joseph Dannenberg and Julius M. Arnstein, both of New York City, for appellants.

Charles Leroy Brown, Jacob Logan Fox, and Nathan S. Blumberg, all of Chicago, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiffs are a partnership engaged in business as factors, and their residence and place of business is in New York. The defendant is a corporation organized under the laws of Illinois, and is engaged in the wholesale shoe business in Chicago, and has been so engaged since 1911.

The following facts appear from the court's findings and are supported by substantial evidence in the record.

Since 1931 the defendant had been selling a brand of shoes known to the trade as Truman shoes, and its business in this line of shoes had grown from a little over $10,000 in 1931 to $93,000 in 1939. In 1937 the defendant employed Arthur Fisher Shoe Company (hereinafter referred to as Fisher) to manufacture for it the Truman shoes, which were warranted by Fisher to have a steel shank, and in the case of the half double sole shoes, a leather middle sole. Each pair of said Truman shoes had the following legend embossed on the outer sole visible to the purchaser: "Truman Arch Shoe," "Steel Arch," "Oak Bend Sole." The latter words were known to the trade to indicate a leather middle sole.

In 1937, 1938 and 1939, the defendant bought many thousands of dollars worth of Truman shoes from Fisher. On November 7, 1939 the defendant discovered for the first time that Fisher was putting into the Truman shoes wooden shanks instead of steel as agreed, and on November 11, 1939, that Fisher was also putting in a paper or composition middle sole instead of leather. On each of these dates, the defendant wrote to Fisher, protesting and demanding an explanation. More customers of the defendant came in complaining about the substitution in Truman shoes of the wooden shank for the steel and the paper or composition sole for the leather. The defendant wrote several more letters to Fisher, advising of these complaints and its discovery and protesting the substitutions. It was not possible to discover the substitutions, and the consequent breach of warranty, without tearing the shoes apart or examining them under an X-ray.

During the winter of 1939-1940 the defendant was unable to find a manufacturer to supply all the Truman shoes it needed.

Fisher had assigned the defendant's accounts to the plaintiffs. Each invoice sent the defendant contained the following statement placed thereon by the plaintiffs:

"This account is payable only to H. M. Hubshman & Bro., Factors, Two Park Ave., New York, to whom the same has been assigned and to whom prompt notice must be given of any objections to payment of this invoice as rendered. Goods returnable for any reason shall be returned only on the Factors' written shipping instructions."

When the defendant received no response from Fisher on its reports and complaints, it sent to the plaintiffs on January 3, 1940, copies of the letters it had written to Fisher, and made complaint to the plaintiffs about the breach of warranty.

In the three years defendant had been doing business with Fisher, the accounts had been assigned to the plaintiffs and each invoice to the defendant contained the notice set out above and placed thereon by the plaintiffs. During this time some ninety-one complaints were made by the defendant about defective merchandise and all were made to Fisher, who made the adjustments, and plaintiffs in every instance approved and issued credit memos to the defendant.

Immediately after the defendant's complaint and notice to the plaintiffs of January 3, 1940 the plaintiffs filed suit on the account. The defendant, in order to maintain its credit standing, had been paying on the account, until the balance due was $10,996. The defendant filed its counterclaim, setting up the breach of warranty and damages therefrom. On the trial the court found for the defendant on its counterclaim in the sum of $6,013.45, and gave judgment for the plaintiffs on their complaint for the difference between the judgment on the counterclaim and the amount of the past-due account, which judgment was in the total sum of $4,982.55. The plaintiffs appealed.

The questions presented by this appeal are whether the plaintiffs were entitled to receive notice of the breach of warranty, whether reasonable notice was given, or whether the notice was waived, and whether the correct rule of damages was applied.

The plaintiffs contend that they were "a seller" within the definition of the Uniform Sales Act of Illinois, and were according to the terms of said act entitled to notice of a breach of warranty within

a reasonable time.[1] In the absence of any authority from Illinois on this point, we shall assume that the plaintiffs, who are assignees of the real seller, are by reason of the definition contained in the statute, "a seller" and entitled to reasonable notice of the breach of warranty.

 The defendant did give notice to the plaintiffs on January 3, 1940. Was this a reasonable notice under all the circumstances? It must be remembered that all the adjustments of complaints and claims in the past, some ninety-one of them, had been worked out by taking them up with Fisher, who made the necessary adjustments with the plaintiffs. It must also be remembered that it was Fisher and not the plaintiffs who had made the warranty. So when on November 7, 1939 the defendant received its first notice of a complaint indicating a breach of warranty, it proceeded as it had in the past to deal directly with Fisher. Fisher did not answer. Complaints began to come in thick and fast and more reports and letters were sent to Fisher; finally, when no response was received from Fisher to these letters and complaints, the defendant on January 3, 1940, notified the plaintiffs. There was *no evidence that the plaintiffs were injured by this delay in receiving notice.* Whether the notice was given within a reasonable time is dependent upon all the circumstances in the case. In view of the plaintiffs' past conduct in relation to the notice of and adjustment of claims directly with Fisher, all of which was contrary to *the written instructions contained on* the invoice and placed there by the plaintiffs, as there were no facts to indicate that the defendant should have proceeded otherwise, and as the defendant pursued the usual routine, consuming therein some seven weeks of time before notifying the plaintiffs, such notice does not seem to us to be unreasonable. We therefore hold that the notice of January 3, 1940, was timely.

 The letters to Fisher relating to the failure of Fisher to conform to the warranty showed no indication that the defendant intended to waive its rights.

The trial court found, and it was a fair inference from the letters sent to Fisher and later sent to the plaintiffs, that the defendant was asserting its rights to receive goods in accordance with the warranty. These letters constituted a sufficient notice. Nashua River Paper Co. v. Lindsay, 249 Mass. 365, 144 N.E. 224; Guthrie v. J. J. Newberry Co., 297 Mass. 245, 8 N.E.2d 774.

 Even if the notice to the plaintiffs of January 3, 1940 was not timely and sufficient, the defendant contends that the plaintiffs waived their right to notice or were estopped by their course of conduct to claim the right to notice. The trial court so found, and in this we think it was correct. The usual practice of the defendant to notify Fisher and to work out its claims through it with the complete acquiescence and cooperation of the plaintiffs has estopped the plaintiffs to complain that the defendant followed the old routine and did not notify them immediately. Plaintiffs by their course of conduct, uniformly followed in ninety-one instances of claim adjustments in the past, had led the defendant to believe, and it had a right to believe, that its pursuit of the same method in this instance would receive the sanction of the plaintiffs. In each of the past instances, it is true, the plaintiffs received notice, but they never received such notice directly from the defendant or required the defendant to notify them. It is well established that one cannot by a long course of conduct lead another to believe that he will not insist upon the strict performance of a duty imposed by law or contract, and then without notice insist upon strict performance. American Spirits Manufacturing Co. v. Western Manufacturing & Oil Co., 213 Ill.App. 612, 619; Chicago & E. I. R. R. Co. v. Moran, 187 Ill. 316, 324, 58 N.E. 335; Evans v. Howell, 211 Ill. 85, 93, 71 N.E. 854. We think the plaintiffs' course of conduct estopped them to claim the right to notice as a matter of right, because they were by force of a statutory definition "a seller."

 The plaintiffs have urged that even though there was a warranty, the defendant was bound to inspect the goods before

---

[1] "* * * 'Seller' means a person who sells or agrees to sell goods, or any legal successor in interest of such person. * * *" Smith-Hurd Ill.Stat. Ch. 121½, § 76(1).

"* * * But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." Smith-Hurd Ill.Stat. Ch. 121½, § 49.

receiving them. The trial court found that the defects were such that they could not be discovered upon ordinary examination, and that it was necessary to tear the shoes down to discover the substitution for leather middle soles, and that to discover the substitution of wooden for steel shanks it was necessary to punch holes in the inside of them with a sharp instrument through a canvas strip apparently put into the shoe by Fisher to conceal the breach of warranty, or to examine the shoes under an X-ray. These defects were latent and were precisely what the warranty was supposed to protect against. Inspection for latent defects was not required. Cook v. Perfection Piano Bench Mfg. Co., 236 Ill.App. 472, 476; J. P. Smith Shoe Co. v. Curme-Feltman Shoe Co., 71 Ind.App. 401, 118 N.E. 360; Bagley v. Cleveland Rolling-Mill Co., C.C., 21 F. 159, 163.

Since there was a warranty, the warranty had been breached, the evidence of the breach was latent, and the plaintiffs had timely and sufficient notice thereof, we hold that the defendant was entitled to recover damages on its counterclaim.

We come now to the question of damages. The trial court found, and there is substantial evidence to support the finding, that at the time of the trial defendant had on hand 4,280 pairs of Truman shoes constructed in breach of the warranty, and 131 pairs that had been worn and returned because they were not made as warranted, and that these shoes were so worn and broken down that they were worthless. As to the 131 pairs, the loss sustained, as found by the court, was $255.45. This was arrived at by allowing $1.77 per pair as the market value of the shoes if they had been made as warranted, plus 4¢ a pair for freight and 14¢ for profit. As to the 4,280 pairs, the court found that in their present condition they had a market value of $1.00 per pair; that the market value of the shoes if made as warranted was $1.77 per pair, plus 4¢ per pair freight, to which was added 15¢ per pair, which the evidence showed was the cost of debranding them to get them ready for resale, and 14¢ per pair, the profit the defendant would have realized if the shoes had been constructed as warranted, making a total of $2.10. After deducting the market value of the shoes as they were from this sum of $2.10, it left a loss per pair of $1.10, or $4,708.

The measure of damages by breach of warranty is provided by the Illinois statutes as follows:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." (1915, June 29, Laws 1915, p. 604, part V, § 69.) Smith-Hurd Ill.Stat., Ch. 121½, § 69, Paragraph 7.

There was no dispute that the contract price of the shoes averaged $1.77 per pair and that it cost 4¢ per pair freight to Chicago. The defendant had been selling Truman shoes with a steel shank and leather middle sole for years and had worked up a substantial business and valuable good will in Truman shoes so constructed. The defendant was under no duty to sell as Truman shoes other shoes which were of inferior quality, and thus do violence to the good will and trade it had built up in Truman shoes.

It was proper, therefore, for the defendant to remove the representation upon the shoes that would identify them as Truman shoes, constructed in accordance with the warranty, when they were in fact not so constructed. The shoes were therefore debranded preparatory to their sale under their true colors, and the expense of so preparing them was a proper element of damages. Waldes v. Hanes, 203 Ill.App. 276; Jewell Filter Co. v. Kirk, 102 Ill.App. 246, 249; Fisher v. Bertram, 100 Ill.App. 542, 544.

The plaintiffs object to the allowance for profits which the defendant would have made on the defective shoes if they had been made according to the warranty and defendant had been permitted to sell them to its trade. Fisher had been selling Truman shoes to the defendant for three years, and knew that the defendant was reselling them for a profit. That was the defendant's business. Knowing these facts, as Fisher must have known them, it must also have known that if it, Fisher, in breach of the warranty, manufactured and sold inferior goods to the defendant, defendant's customers would find it out and it would inevitably lead to a loss of business and profits to the defendant. Whatever Fisher knew would bind the plaintiffs, its assignee.

■ The facts just recited seem to us to constitute a special set of circumstances showing proximate damage of a greater amount than the difference between the value of the goods at the time of delivery and their value had they answered to the warranty, and the damage as proximately indicated was the loss of profits. Recovery of profits under circumstances not so strong as the instant case was allowed by the Appellate Court of Illinois in Armeny v. Madson & Buck Co., 111 Ill.App. 621. There the court laid down the rule as follows:

"Appellants knew when they sold the pens to appellee that its intention was to sell them again and at a profit. That is what it was in business for and the object for which it bought them. Appellants must therefore be regarded as having contemplated resales by appellee at a profit and cannot complain at being compelled to make good to it the loss on the resales if it was unable to supply its customers by buying the goods in the open market."

See, also, Black Diamond Fuel Co. v Illinois Fuel & Phosphate Co., 219 Ill.App. 150; Loescher v. Deisterberg, 26 Ill.App. 520; J. P. Smith Shoe Co. v. Curme-Feltman Shoe Co., 71 Ind.App. 401, 118 N.E. 360, 369.

■ The rule in Illinois is indicated by these cases. We are bound by it and hold that the profits were properly added and recoverable.

■ Another element of damages for the loss of profits, in the sum of $1,-050, was allowed by the trial court and this is also objected to by the plaintiffs. The court found that in 1940 the defendant sold 14,000 less pairs of Truman shoes than in 1939, and that the profit thereon was 7½¢ per pair, or a total damage of $1,050. There is no finding by the court that this loss of business was due to the breach of warranty by the plaintiffs or their assignor, Fisher, in furnishing inferior shoes. Indeed, the findings did not state to what this alleged loss is attributable. The failure of the trial court to find a fact essential to the defendant's recovery cannot be supplied by us, even if we thought the evidence in the record warranted it. Findings of fact are like a special verdict, and all the facts essential to entitle a party to judgment must be found; and a judgment rendered on a special finding that fails to find all the essential facts is erroneous. Ward v. Cochran, 150 U. S. 597, 608, 14 S.Ct. 230, 37 L.Ed. 1195; United States Fidelity & Guaranty Co. v. Commercial Nat. Bank, 5 Cir., 55 F.2d 564, 567; United States v. Harris, 7 Cir., 77 F. 821; Daube v. Philadelphia, etc., Co., 7 Cir., 77 F. 713. In the absence of a finding that this alleged loss was due to the default of the plaintiffs' assignor, Fisher, or of the plaintiffs, this item of damages was improperly assessed against the plaintiffs.

■ Plaintiffs further contend that it is undisputed in the evidence that 550 pairs of shoes included in the total of 4,280 were purchased by the defendant prior to June 14, 1939, while the counterclaim claimed damages on only those shoes purchased and delivered after that date. No effort was made at the trial by the plaintiffs to limit the inventory to June 14, 1939 and subsequently. Therefore, the court was not asked to limit the inventory to June 14, 1939 and thereafter. Neither have the plaintiffs shown wherein they were prejudiced in their defense upon the merits. In such circumstances, the counterclaim will be deemed amended to conform to the proof. Federal Rules of Civil Procedure, Rule 15(b), 28 U.S.C.A. following section 723c.

■ Several other questions as to the court's refusal to receive certain evidence, etc., are mentioned in the brief. The matters are not argued and no authorities were cited to sustain plaintiffs' suggestion of error, and we consider the points waived if they had any merit.

The judgment is reversed, with instructions to the District Court to restate its conclusions of law in conformity with this opinion.

Each party shall pay its own costs in this court.