MILLAR BROS. & CO., Inc.

v.

ARMOUR AND COMPANY
(a corporation).
No. 14509.

United States District Court
E. D. Pennsylvania.

March 29, 1957.

Einhorn & Schachtel, Robert B. Einhorn, Philadelphia, Pa., for plaintiff.

Robert A. Detwiler, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

The defendant filed motions for new trial and for alteration or amendment of the judgment entered against it after a trial to the court without jury. Except for the one additional allegation in the motion for new trial—that the court erred in admitting, over defendant's objection, certain opinion testimony—both motions raise identical questions.

■ The opinion testimony complained of was that of plaintiff's general manager to the effect that the pork trimmings shipped by defendant to plaintiff were not adequately pre-chilled prior to shipment. The record does not support defendant's contention. Defendant's objection to the following question by plaintiff's counsel was overruled:

> "Q. Based upon your experience are you able to state with a reasonable degree of certainty the cause for receipt of a shipment of fresh pork trimmings in a beady and sticky condition with a strong musty odor and rancid fat, assuming that the car left by rail from Chicago on September 20, 1951; assuming further that the car was re-iced twice on September 21; assuming further that the car arrived in Philadelphia on September 22 with the ice bunkers $^{9}/_{10}$ full and was re-iced on September 23, and was unloaded on September 24 with the bunkers $^{9}/_{10}$ full."

The witness replied "Yes" to this question which required only an affirmative or negative answer. However, defendant's counsel made no objection to the subsequent questions to the witness which sought to elicit his opinion. On the following day defendant's counsel, in effect, renewed the identical objection and the court adhered to its former ruling; moreover, defendant made no motion to strike out the opinion testimony given in response to the unchallenged questions on the preceding day. Thereafter defendant's counsel cross-examined the witness extensively in relation to this opinion. Counsel's present effort is to enlarge his single objection to embrace the opinion

evidence previously admitted without objection and this may not now be done. Whatever may have been counsel's intention at the trial, the court can rule only when that intention is voiced by objection.

The request to have the court amend the 6th finding of fact will be denied. The witness, Clark, testified to normal preparation procedure generally. Defendant's language in its answers to plaintiff's interrogatories relates clearly to the processing of pork trimmings generally and not to the specific processing of the subject pork trimmings. The defendant's answers further indicate that no specific record was kept and that defendant was unable to ascertain the identity of any individual who handled the subject pork trimmings, indicating the unlikelihood of the availability of any specific evidence relating to the processing of the subject pork trimmings.

The 15th finding of fact, while not misleading, will be amended to state the fact with greater clarity.

The request that the 16th finding of fact be amended will be denied. Aside from the testimony of Zitin, the evidence is sufficient to support findings that the pork trimmings were spoiled on arrival and that the spoilage did not occur in transit. It is fair to infer, therefore, that spoilage of the pork trimmings had begun when they were loaded by defendant for shipment.

The request that the 19th finding of fact be amended will be denied. Defendant offered in evidence exhibit D–2 which was a letter from defendant to plaintiff, dated November 28, 1951. This letter confirms the fact that there had been a telephone conversation that day between plaintiff's manager and defendant's authorized representative. The letter also gives extensive purported data relating to the shipment and, significantly, the last sentence states: "We might say to you that there were other fresh Pork Trimmings in barrels shipped approximately the same time the above car went forward and we received no complaint on them." The implication is clear that plaintiff did complain to defendant, by telephone, on that day about the spoiled condition of the pork trimmings.

Defendant also offered in evidence exhibit D–1 which was its letter to plaintiff, dated October 29, 1951. This letter disclosed receipt by the defendant of the broker's letter requesting defendant to furnish plaintiff with the information which the defendant did supply in that letter. The very nature of the plaintiff's request, transmitted to the defendant by the broker, as well as the type of information furnished to plaintiff by defendant in consequence thereof, was such as reasonably indicated that plaintiff had complained about the condition of the pork trimmings received, and that defendant, on October 29, 1951, was aware of such complaint. Defendant's awareness. is apparent, too, from the following self-exculpatory sentence in defendant's own letter: "Our Records on this car shows that it was properly handled up until the car was pulled from our dock." Defendant's witness, Ditzler, admitted he "assumed something was wrong when he received a letter in October from a broker." The letter referred to was the broker's letter, dated October 22, which defendant received on October 23, 1951. This was the letter which led the defendant to write its letter of October 29, 1951 (Exhibit D–1) to the plaintiff. Ditzler further admitted that his was the department maintained by the defendant to receive complaints through brokers about shipments sold by defendant through brokers.

Defendant's request that the 4th and 5th conclusions of law be amended will be denied. Under Illinois law the question of what is a reasonable time for a buyer to give notice of breach of warranty to a seller is ordinarily one of fact and becomes a question of law only when all reasonable minds would reach the same conclusion. Wainwright v. Elgin Windmill Company, 1956, 9 Ill.App. 2d 574, 134 N.E.2d 44; Hubshman v. Louis Keer Shoe Co., 7 Cir., 1942, 129

F.2d 137; Mandel Bros. v. Mulvey, 1923, 230 Ill.App. 588.

Order

Now, March 29, 1957, finding of fact No. 15 is hereby amended to read:

"15. Plaintiff promptly caused all the pork trimmings to be picked over, washed and placed in a curing brine solution for salvage and, as a result, the weight of the pork trimmings salvaged after loss for washing, salvage and shrinkage was 21,426 lbs. having an after-salvage value of $.06 per lb."

The defendant's motions for new trial and for alteration or amendment of the judgment are otherwise denied.