Rogers, J. .
The case stands on a demurrer by Black, one of the defendants, to the petition. The petition shows that three persons as partners in March, 1908, entered into .a written agreement with the defendant, Thompson, whereby the former for certain prices to be paid by the latter were to furnish him the output of their *231 creamery, known as the Groveport Creamery, for a year beginning April 1,-1908; that Black for a consideration bound himself as surety for the faithful performance of the contract by Thompson; that before the 1st of April, 1908, one of the parties withdrew from the firm and assigned all his interest to the remaining partners who succeeded to the business and performed this part of the above contract with Thompson, but, the defendant defaulted in payment for the output, or at least for a part of it, and the succeeding partners, plaintiffs herein, sue Thompson on the contract, and Black on his contract of suretyship or guaranty. To this petition Black demurs generally, and the point made is that his was a special guaranty, and the withdrawal of the retiring partner before anything was furnished under the contract worked a revocation of the guaranty.
The question raised is not easy of solution. However, I have reached'the-conclusion, after much research, that the ease turns on the question as to whether the principal contract was assignable, so as to compel Thompson, if it were assigned by the partners, in whole or in part, and thereafter performed by the assignees or successors, to perform his part, or to make claim against him for the breach'. If the principal contract were assignable, I am convinced that the liability of the surety, if his contract was intended to pass with the assignment, passed along with the original contract and was a binding contract in the hands of the assignees. But if the original contract could not be assigned, then the surety obligation would not pass.
The original transaction was a private contract between two parties, to furnish the principal defendant the output of their factory for one year on certain terms. The general rule is that such contracts are assignable (4 Cyc., 20, and cases). There are exceptions, as therein stated, but the ease before us does not come within any of such exceptions. See page 22, supra, and cases. It is laid down in 2 Current Law, 147, that “where the guaranty is of a contract already made which is definite in extent and amount, unless the contrary appears to be the intention of the parties, it is assignable along with the principal debt.” In support of the foregoing proposition the case of Am. Bond & T. Co. v. B. & O. S. W. R. Co., 124 Fed., 866, is cited, the syllabus of which is:
*232 ‘ ‘ 1. The rule settled by the Supreme Court is that a contract by which one party became obligated to the other-is assignable by the latter, unless there is something in the terms or nature of the contract which evidences an intention of the parties that it should not be assignable.”
The case shows that receivers of a railroad made a contract with a contractor for certain betterments of the road, and took a bond from the contractor for the performance of the contract, and thereafter on a sale of the road by the court, assigned the contract and bond to the purchaser; and it was held that the assignment was valid, and vested the assignee with the right to maintain an action on the bond.' The third proposition of the syllabus is:
“3. The fact that the bond of the contractor was a contract of guaranty did not render its assignment by the obligees invalid, since it was a guaranty of the performance of a contract already in existence, and the terms of the obligation were not changed, nor the surety’s liability increased by the assignment.”
In the above case many .'of the authorities are reviewed, and the conclusion is reached that the guaranty is not a special guaranty, but general. The ease is also persuasive because decided by the Court of Appears, Sixth Circuit. The guaranty in the case before us, like the American Bonding case, is of a contract already made, and within the knowledge of the guarantor at the time he signed the contract. It is also definite as to amount and extent, namely, the output of the factory for the period of one year.
The cases relied upon as authority to support the contention that the guaranty in question was not assignable, are those wherein the future conduct of the obligee may or may not render the obligor liable, and are not those where there is a definite contract between the original parties to which the guaranty is collateral. Letters of credit and the like have no binding force until the original contract between the creditor and the principal is executed. But in the case at bar the contract between the original parties was definite and fixed in amount and extent, at the time it was signed and delivered, and the guarantor knew at the very time he executed the contract the extent of his liability; *233 not in dollars and cents, but so far as the amount and extent of Thompson’s liability was concerned, namely, the liability to pay for the output of the factory for one year.
See also an interesting case on this subject, Levy v. Cohen et al, 92 Supp. (N. Y.), 1074, the syllabus of which is:
“A contract by M to build a synagogue for a congregation being assignable, a guaranty to pay him for the work, if the congregation fail to do so, is a general and not a special guaranty, so that M may assign it with the contract and the guarantors be liable to the assignee.”
The mistake of course arises in classifying the contract of guaranty in question as a special guaranty instead of a general guaranty. There was no trust or confidence imposed in the original partnership to which the guarantor became surety, imposing upon it personally the duty of complying with its contract, and excluding all others from accepting its terms and taking advantage thereof. The fulfillment of the contract of the original partnership by an assignee could work no hardship upon the guarantor, or in any way change his liability as surety. All the terms of'the original contract were fixed in its execution, and with it the liability of .the surety. I have therefore concluded that the demurrer is not well taken and I overrule the same.
There is another line of decisions upon which this case could be sustained as against demurrer, beginning with Barclay v. Lucas, 1 Durn. & East, 391 n. (3 Dong., 321), where the intention of the parties was that the guarantor should be bound to the house as such, no matter what changes occurred in the partnership. The case before us was to take the output of the factory, no matter who may have operated it. However, I do not think it necessary to adopt that theory, although Lord Mansfield announced the doctrine principal case; and so far as I have been able .to discover, that case, while questioned a few times, has never been overruled. Leave to defendant to plead within rule.